FILED

October 4, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 7:48 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | |
|---|---|
| Steven Kelly Lambert, **Employee,** | ) Docket No.: 2016-01-0100 |
| v. | ) State File No.: 99928-2015 |
| The Roberts Company, **Employer,** | ) |
| And | ) Judge Thomas Wyatt |
| National Union Fire Ins. Co., **Carrier.** | ) |

## EXPEDITED HEARING ORDER DENYING BENEFITS

This case came before the undersigned Workers' Compensation Judge on September 23, 2016, upon the Request for Expedited Hearing filed by the employee, Steven Kelly Lambert, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The hearing focused on whether Mr. Lambert submitted sufficient evidence to establish he is likely to prevail at a hearing on the merits that his alleged injuries arose primarily out of and in the course and scope of employment. For the reasons set forth below, the Court finds Mr. Lambert is not likely to prevail at a hearing on the merits on the stated issue and is not entitled to the benefits requested.[1]

### History of Claim

Mr. Lambert is a fifty-two-year-old resident of Iuka, Mississippi. (T.R. 1 at 1.) He is a travelling pipefitter who "follows the work" to various construction sites. On November 11, 2015, he hired on with The Roberts Company (TRC), a contractor installing industrial pumps at Resolute Forest Products, a paper mill in Calhoun, McMinn County, Tennessee. (Ex. 8 at 1.) Mr. Lambert alleged he sustained an aggravation of bleeding hemorrhoids and a back injury on December 2, 2015, while carrying an I-beam in the course and scope of his employment by TRC.

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

1

TRC hired Mr. Lambert to work ten hours per day, seven days per week; however, he only worked four of the first fourteen days after the date of hire. (Ex. 19.) During the Expedited Hearing, Mr. Lambert testified he "missed a few days" at the beginning of the job because of "truck problems" that resulted in him having to rent a room. Charles Smith, TRC's general foreman and Mr. Lambert's direct supervisor, testified that, during these periods of absence, Mr. Lambert texted him to explain he missed work because he had gotten hurt setting up his camper.[2]

Concerned about his job status, Mr. Lambert asked Mr. Smith if he still had a job at TRC. Because he needed good pipefitters on the project, Mr. Smith had Mr. Lambert's previously-filed termination "pulled," with the expectation that Mr. Lambert would return to work after a scheduled Thanksgiving break. TRC's records confirmed Mr. Lambert returned to work on November 30. (Ex. 19.) The records indicated he worked a full shift on November 30, three and one-half hours the next day due to rain, and a full shift on December 2, the date of injury. *Id.*

Mr. Lambert testified that, on the date of injury, Mr. Smith brought him a section of a steel I-beam and instructed him to carry it to a location for use as a support for TRC's pipe installation.[3] Mr. Lambert stated he carried the I-beam without assistance up a flight of stairs, across a catwalk, and down another flight of stairs. He then sat the beam on end at a corner and scooted it along the deck to its ultimate destination. (Ex. 13 at 5.) Mr. Lambert testified he knew at the time he was handling the I-beam that he had hurt his back.

Mr. Lambert finished his shift on December 2. (Ex. 19.) He testified that, when the shift ended, he sought out Carl Clark, TRC's safety manager, to tell him he thought he "may have pulled a muscle in my back or something."[4] Mr. Clark denied this conversation took place. Mr. Lambert went home and, when he next had a bowel movement, noticed bright red blood in his discharge. The next morning, Mr. Lambert

---

[2] On cross-examination, Mr. Lambert testified he did not think he sent the alleged text to Mr. Smith. Under further cross-examination, he testified he did not remember sending the text, but stated he may have done so.

[3] Mr. Lambert testified during the hearing that the I-beam he carried weighed two hundred pounds. He told a doctor he saw at Doctors Express that the beam weighed one hundred sixty pounds and testified during his recorded statement that the beam weighed two hundred sixty-five pounds. (Ex. 2 at 3; Ex. 13 at 5.) Mr. Lambert set the weight of the beam at two hundred forty pounds in his filings before this Court. (T.R. 1 at 1; T.R. 4 at 1.) Mr. Lambert's supervisor testified the I-beam weighed forty-eight pounds.

[4] When questioned in his recorded statement about reporting his injury, Mr. Lambert stated he reported his injury to "Mr. Carl." (Ex. 13 at 6.) However, as to the timing of the report, Mr. Lambert said that, at the end of the shift on December 2, 2015, "[t]here's nobody really to talk to. No foremen or [the foremen were] scattered out here and there and everything. So like I came on home[.]" Later during the recorded statement, Mr. Lambert stated, "[w]ell, three or four days rolled around, I called Carl. I said I need to see a doctor." *Id.*

called TRC to inform them he was not coming to work. He stated in a voicemail message, "I'm off going to a doctor today. I'm bleeding real bad. I don't know what happened yesterday at work. I didn't notice it until I got home last night." (Ex. 12.)

Mr. Lambert sought emergent care at Skyridge Medical Center in Cleveland, Tennessee late in the afternoon on December 3, reporting rectal bleeding and left-sided low back and flank pain. (Ex. 1 at 2, 11.) The Skyridge records indicated Mr. Lambert reported working all day the previous day with "fairly heavy activity." *Id.* at 11. A rectal exam revealed the presence of bright red blood. *Id.* at 12. After a CT scan failed to show an acute problem requiring hospitalization, the emergency room doctor diagnosed bleeding hemorrhoids and a muscle strain of the back and released Mr. Lambert with medication for his hemorrhoids. *Id.* at 14-15, 17.

Mr. Lambert did not return to work at TRC in the days following the emergency room visit. (Ex. 19.) He testified he unsuccessfully attempted to telephone Mr. Clark during this period to arrange for treatment of his injuries. According to Mr. Clark, someone in TRC's human resources department called him to inquire what he knew about Mr. Lambert sustaining a work injury. Mr. Clark contacted Mr. Lambert and offered him transportation to see a doctor for his injuries. Mr. Lambert declined, stating he was in too much pain and it was too late in the afternoon to go to the doctor that day. He agreed to meet Mr. Clark the following morning at the doctor's office.

Mr. Lambert saw a doctor at Doctors Express, a walk-in clinic in Cleveland, Tennessee, on the morning of December 8. (Ex. 2 at 3.) He reported a history of back, left leg, and hip pain beginning December 2, when he "lifted a 4ft by 8in I-beam weighing approximately 160 lbs." *Id.* Mr. Lambert told the doctor he had not had a previous back injury or surgery. Mr. Lambert also reported his bleeding hemorrhoids and his previous history of hemorrhoid surgery approximately sixteen years previously. *Id.*

Doctors Express released Mr. Lambert with prescriptions for his back pain and hemorrhoids. (Ex. 2 at 5.) According to Mr. Clark, the doctor restricted Mr. Lambert to sedentary work. Mr. Clark testified he told Mr. Lambert TRC could accommodate the restriction and instructed him to report back to work that afternoon. Mr. Lambert testified he told Mr. Clark he accepted the light duty assignment, but testified he understood he was to go in the next morning.

Mr. Lambert never returned to work for TRC. (Ex. 19.) Mr. Clark and Mr. Smith, testified Mr. Lambert did not report back to the work site, nor did he call in before his scheduled shifts began to explain why he was not coming to work. Mr. Smith testified that TRC's rule requires termination of an employee when he or she is a "no call/no show" for three consecutive days. Based on this rule, he terminated Mr. Lambert on December 11, the third day Mr. Lambert was a no call/no show after Doctors Express

3

released him to return to work on light duty.[5]

Contrary to Mr. Smith's and Mr. Clark's testimony, Mr. Lambert testified he appeared for work on December 9,[6] but found his "brass was not on the board" when he attempted to enter the site.[7] He stated he called Mr. Clark later that day to tell him he could not work because he was still bleeding and in pain. Mr. Lambert testified he called TRC's office manager, Tammy Whitehurst, the next day to tell her he was bed-ridden due to his injuries. He testified he later spoke to Mr. Clark, who authorized him to return to Doctors Express.[8] Mr. Clark testified he never talked to Mr. Lambert after they parted from Doctors Express on December 8.

By December 21, Mr. Lambert had returned to his home in Mississippi. He sought treatment at Baptist Memorial Hospital in Columbus, Mississippi for back pain and numbness in his left leg. (Ex. 3 at 2, 7.) The Baptist records note that Mr. Lambert related his pain to a December 2, injury while "picking up a beam at work." *Id.* at 7. The emergency room doctor ordered an MRI, which Mr. Lambert underwent on January 7, 2016. (Ex. 5 at 1.) The MRI revealed mild multilevel degenerative changes, a central annular tear at the T12-L1 level and a bilateral L5 pars defect. *Id.*

After he returned to Mississippi, TRC's carrier offered Mr. Lambert a panel for treatment of his alleged back injury, from which he selected Dr. Slater Lowry, an orthopedic surgeon in Columbus, Mississippi. (Ex. 16.) Mr. Lambert saw Dr. Lowry on January 8, reporting he "hurt [h]is back and left hip on the job last month." (Ex. 4 at 1, 4.) Dr. Slater also noted the presence of blood on the rectal exam he performed. *Id.* at 4. He ordered a colonoscopy, prescribed pain medication, and recommended injections and physical therapy to treat Mr. Lambert's back pain. *Id.* at 4, 8, 25-6. By March 31, Dr. Slater's note indicates "the workman's comp case has been put on hold for now." *Id.* at 8.[9]

In February 2016, Mr. Lambert filed a Petition for Benefit Determination, seeking medical and temporary disability benefits. (T.R. 1.) When mediation failed to resolve

---

[5] TRC's records indicate Mr. Lambert's termination date was December 8, 2015, the fourth date following the date of injury on which TRC listed Mr. Lambert as a "no call/no show." (Ex. 8 at 1; Ex. 19.)

[6] However, during his recorded statement, Mr. Lambert testified, "[b]ut the next morning I couldn't go in. I couldn't. It was—there was no way." (Ex. 13 at 7.)

[7] TRC assigns its employees a brass tag with a number on it, which the employee picks up at a "brass shack" to gain entry to the worksite.

[8] Mr. Lambert never returned to Doctors Express. (Ex. 2.)

[9] Mr. Lambert saw another orthopedic surgeon in Columbus, Mississippi, Dr. Justin Hall, in February and March 2016. (Ex. 6). Dr. Hall placed restrictions on Mr. Lambert's work activities. *Id.* at 1.

the parties' disputes, the mediating specialist issued a Dispute Certification Notice (T. R. 2) and this hearing ensued.

## Findings of Fact and Conclusions of Law

The 2013 Workers' Compensation Reform Act requires that an injury for which an employee seeks benefits arise "primarily" out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13) (2015). In *Buchanan v. Carlex Glass Co.,* No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015), the Workers' Compensation Appeals Board held the employee has the burden of proving all elements of a workers' compensation claim. *See also* Tenn. Code Ann. §50-5-239(c)(1) (2015). As to the standard of proof applicable at an Expedited Hearing, the Appeals Board held in *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9-10 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015), an employee need not establish his or her claim by a preponderance of the evidence, but must only come forward with sufficient evidence to enable the trial court to conclude that the employee "would likely prevail at a hearing on the merits."

Tennessee Code Annotated section 50-6-102(10(C) (2015), provides that "an injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." In other words, the employee must establish the work-relatedness of his or her injury by expert medical opinion.

In *Brees v. Escape Day Spa & Salon,* No. 2014-06-0072, TN Wrk. Comp. App. Bd. LEXIS 5, at 17-8 (Tenn. Workers' Comp. App. Bd. Mar. 12, 2015), the Workers' Compensation Appeals Board reversed a decision of the trial court because it rejected the probative weight of the medical opinion relied upon by the trial court and accepted the opinion of another physician. The Appeals Board rejected the causation opinion on which the trial judge relied because that doctor rendered his opinion without either reviewing diagnostic testing or considering other potential causes for the employee's condition. The Appeals Board's decision in *Brees* exemplifies the established principle of Tennessee law that the probative value of a doctor's causation opinion hinges on the accuracy and completeness of the facts the doctor considered in rendering the opinion. *See* Tennessee Rule of Evidence 703, providing, in part, "[t]he court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness."

The requirement that a doctor obtain accurate and complete facts for consideration in formulating his or her causation opinion is of critical importance in a claim, such as this claim, where the employee's alleged injuries were not obvious to human observation,

5

nor caused by an incident which, if observed, would lead the observer to the obvious conclusion that the employee sustained injury. With injuries such as those alleged here, only Mr. Lambert can truly know if his injuries occurred on the job. Accordingly, the Court must first assess Mr. Lambert's credibility in determining whether the doctors who rendered causation opinions in this claim possessed accurate and complete information upon which to formulate their causation opinions. If they did not, their opinions will not assist the Court in determining this claim.

The Court closely observed Mr. Lambert's demeanor during his in-court testimony. On direct examination, his spoke confidently and assertively. However, his demeanor changed when confronted on cross-examination with discrepancies between his testimony and documentary evidence introduced into the record. During cross-examination, the Court observed that Mr. Lambert testified with less certainty and provided no viable explanations for several discrepancies between his testimony and the documentary evidence.

Among the many discrepancies are the following. Mr. Lambert provided conflicting testimony on why he missed work during the first fourteen days of his employment as noted above. He provided widely divergent stories about the weight of the I-beam he carried. At times he claimed it weighed two hundred, one hundred and sixty, two hundred forty and two hundred sixty-five pounds.

Additionally, the Court is troubled about the inconsistencies between Mr. Lambert's in-person testimony and the recorded statement he gave on December 22 to a representative of TRC's carrier. Mr. Lambert testified at trial he told Mr. Clark on the date of injury that he may have injured his back. However, when describing in his recorded statement whether he gave notice of his alleged injury on the date it occurred, he stated, "[t]here's nobody really to talk to. No foremen or [they were] scattered out here and there and everything. So like I came on home[.]" Later during the same recorded statement, Mr. Lambert stated, "[w]ell, three or four days rolled around, I called Carl. I said I need to see a doctor." (Ex. 13 at 6.)

The Court also noted Mr. Lambert's recorded statement testimony contradicted his in-person testimony that he appeared for light-duty work on December 9. During his recorded statement, Mr. Lambert testified, "[b]ut the next morning [after I went to Doctors Express on December 8,] I couldn't go in. I couldn't. It was—there was no way." *Id.* The Court sees no means by which to reconcile the above discrepancy.

Moreover, the Court also finds that Mr. Lambert mischaracterized the nature and extent of hemorrhoid bleeding and back pain he experienced prior to December 2. He both testified and told medical providers he had little or no hemorrhoid problems since he underwent surgery more than fifteen years previously. To the contrary, records of The Clinic at Elm Lake, P.A., in Columbus, Mississippi indicate Mr. Lambert saw a

6

gastroenterologist on April 29, 2015, reporting bleeding and profound anemia. (Ex. 7 at 7.) The physician stated in his report he presumed the anemia related to Mr. Lambert's bleeding hemorrhoids. *Id.*

Mr. Lambert also testified he had little or no back pain prior to December 2, 2015. The Elm Lake records indicated he presented with back and knee pain on April 21, 2015, for which a nurse practitioner prescribed muscle relaxers. (Ex. 7 at 1.) This note also indicated another provider had prescribed muscle relaxers for Mr. Lambert previously. *Id.* The Elm Lake records further indicated a provider prescribed Mr. Lambert medications, including narcotic pain medication, on July 6, 2015, and August 31, 2015, for conditions including lumbago and muscular pain. *Id.* at 9, 11.[10]

In view of the above-described discrepancies between Mr. Lambert's trial testimony and the documentary evidence introduced into the record, the Court finds Mr. Lambert without credibility. The Court is aware Mr. Lambert introduced evidence that Dr. Lowry opined Mr. Lambert's bleeding hemorrhoids and back condition related to his work at TRC.[11] (Ex. 4 at 25-6.) However, the Court gives no weight to Dr. Lowry's opinion because Dr. Lowry can only give an opinion based on the version of facts given him by Mr. Lambert. As stated previously, the Court gives no weight to Mr. Lambert's version of the facts and, thus, cannot accredit Dr. Lowry's causation opinion. Accordingly, the Court holds Mr. Lambert is unlikely to prevail at a hearing on the merits in establishing his alleged injuries arose primarily out of and in the course and scope of employment. Therefore, the Court denies Mr. Lambert's claim for benefits.[12]

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Lambert's request for an interlocutory order of medical and temporary disability benefits is denied at this time.

2. This matter is set for a telephonic Initial (Scheduling) Hearing on December 12, 2016, at 9:00 a.m., Eastern Time. The parties shall call in to 855-747-1721 (toll-free) or 615-741-3061 to participate.

---

[10] The Court also noted that Mr. Lambert testified in his recorded statement that, in the days before Christmas 2015, he suffered severe back and leg pain, even when he pushed the gas pedal of his truck. However, the Court also noted that Mr. Lambert's *Facebook* postings during the same period indicate he went deer hunting. The Court did not deem credible Mr. Lambert's testimony that his *Facebook* postings described another hunter's activities, noting the information in the postings indicated the writer of the posts, and not someone else, engaged in the activity described and depicted.

[11] The Court also noted TRC introduced evidence that a doctor at Doctors Express and Dr. Hall opined Mr. Lambert's injuries did not primarily arise out of and in the course and scope of employment. (Ex. 2 at 3; Ex. 14.)

[12] The Court's decision pretermits the need to decide the Motion in Limine Mr. Lambert filed in connection with Dr. Jason Hall's deposition.

**ENTERED** this the 4th day of October, 2016.

_____
**Thomas Wyatt, Judge**
**Court of Workers' Compensation Claims**

<u>Initial (Scheduling) Hearing</u>:

An Initial (Scheduling) Hearing has been set with **Judge Thomas Wyatt, Court of Workers' Compensation Claims. You must call 855-747-1721 (toll-free) or 615-741-3061 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order Denying to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk _within seven business days_ of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of**

**Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the Workers' Compensation Judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:

1. Medical records of Skyridge Medical Center;
2. Medical records of Doctors Express;
3. Medical records of Baptist Memorial Hospital;
4. Medical records of Lowry Medical Clinic/Dr. Slater B. Lowry;
5. Medical records of Imaging Center of Columbus;
6. Medical records of Columbus Orthopedic Clinic/Dr. Justin Hall;
7. Medical records of Elm Lake/Stephanie Gale, NP;
8. Personnel records of Steven Kelly Lambert;
9. Handwritten statement of Charles Smith;
10. Diagram of beam;
11. December 3, 2015 *Facebook* post;

12. Transcript of voicemail left by Steven Kelly Lambert on The Roberts Company phone;
13. Transcript of recorded statement of Steven Kelly Lambert taken December 22, 2015;
14. Transcript of the deposition of Dr. Justin Hall;
15. Accident reports and typed notes of Carl Clark, safety manager of The Roberts Company;
16. Unsigned Agreement Between Employer/Employee Choice of Physician form (C-42);
17. *Facebook* posts between December 26, 2015, and January 1, 2016;
18. November 2015 and December 2015 calendars; and
19. Email from Tammy Whitehurst to Ambre Wachter containing Steven Kelly Lambert's attendance record from November 11, 2015, to December 8, 2015.

Technical record:[13]

1. Petition for Benefit Determination, filed February 12, 2016;
2. Dispute Certification Notice, filed April 1, 2016;
3. Request for Expedited Hearing, filed July 21, 2016;
4. Affidavit of Steven Kelly Lambert, filed August 2, 2016.

---

[13] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 4th day of October, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Matthew Coleman, Attorney | | | X | MColeman@loganthompsonlaw.com |
| Charles Poss, Attorney | | | X | Charlie.poss@leitnerfirm.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

11